UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KENNETH A. ELLIOTT,

    Petitioner,

v.

UNITED STATES OF AMERICA and
INTERNAL REVENUE SERVICE,

    Respondents.

## PETITION TO QUASH THIRD-PARTY SUMMONS

COMES NOW Kenneth A. Elliott, Petitioner, setting forth the following facts and legal grounds for the purpose of quashing the third party summons, a copy of which is attached hereto as Exhibit A, issued by the Respondents.

## JURISDICTION

1. This court has jurisdiction pursuant to Internal Revenue Code ("IRC") 26 U.S.C. § 7609(b)(2)(A). IRS summonses issued to third parties are subject to special provisions of the IRC. Only the "district court for the district within which the person to be summoned resides will have jurisdiction" over the proceeding to quash. 26 U.S.C. § 7609(h) (1); Masat v. United States, 745 F.2d 985, 987-88 (5th Cir.1984). Venue with this court is proper because the third-party record keeper from whom records are sought resides in and maintains an office within this court's judicial district.

2. Elliott has complied with the proper giving of notice of this petition as required by 26 U.S.C. § 7609.

## PARTIES

3.      The Petitioner in this action is Kenneth A. Elliott (hereafter "Elliott") who is not the person summoned, but is a "person who is entitled to notice" of the Summons under IRC §7609(a) and who did receive such notice from the IRS and is named in the Summons as being the subject of investigation. The Internal Revenue Service must prove that it has given due notice to each person or entity identified in the summons and that it has done so within three days from the issuance of each summons as required by IRC §7609(a)(1) and Final Reg. §301.7609-1.

4.      The Respondents in this action are the United States of America and the Internal Revenue Service with offices and mailing addresses as set forth in the Summons as 15 New Sudbury St., Boston, Massachusetts 02203.

## FACTS

5.      Petitioner Elliott is the administrator of several welfare benefit trusts for numerous beneficiaries. Mr. Elliott has held this position since 1988. The trusts that he administers have an independent banking institution as the trustee and these trusts, since their inception, have been in full compliance with all tax laws. This is not a case where the taxpayer has failed or refused to file tax returns, or where criminal prosecutions have become involved.

6.      The trusts that are the subject of the attached summons are five different Voluntary Employee Beneficiary Associations, (hereafter "Veba") lawfully created and existing under Internal Revenue Code §419(A)(f)(6). Under this section Congress has allowed small businesses to enjoy the advantage of purchasing life insurance benefits and deducting the premiums as a business expense, as a Veba, that otherwise could only be enjoyed by extremely large companies. The IRS has examined these Vebas many times in the past and upheld their validity and the deductibility of related premium payments. See IRS Technical Advisory Memorandum (TAM) 200511015.

567830.1

7.      The Veba administers the periodic collection of premiums and pays out insurance proceeds at time of death for member employees. In addition the Veba coordinates institutional administration of the funds through its designated trustee (banks) and responds to questions and requests from member employers.

8.      The Internal Revenue Service issued its determination letter recognizing the Veba's lawful existence in 1968. See IRS Determination Letter attached as Exhibit B. Since that time the Internal Revenue Service (hereafter "IRS") has conducted audits of the Elliot Vebas. Under these audit/examinations the IRS requested large amounts of documents, examined various records and documents and found them to be in compliance. See "No Change" IRS audit letters for the California Building Supply Veba, and the Retail Merchants League Veba (which are the same as the Southern California Medical Profession Association Veba) attached as Exhibit C. In December of 1994, the IRS also issued a "No Change" examination letter after conducting an exhaustive audit of the Southern California Medical Profession Association Veba. See Exhibit D attached hereto.

9.      By notice dated November 22, 2002, the IRS confirmed another audit/examination of the Southern California Medical Profession Association Veba. See Exhibit E. These audits have not resulted in any required changes, defects or wrongful reporting. In addition the IRS has conducted audits of the participating Veba employers, demanding large amounts of documents, records and examining the Veba, its accounting records, correspondence, marketing documents, brochures, the Veba plan, deductions and many other items without any material adverse impact on any of the Vebas. IRS field auditors, after conducting lengthy examinations have issued favorable determination letters.

10.     In addition to the above IRS audits, the IRS has issued many Information Document Requests (form 4564) and subpoenas asking for and receiving from various participant employers

the same documents that are now being requested of Elliott. These documents have been supplied to the IRS. Now the IRS demands many documents from an attorney, Marcia S. Wagner and of her law firm known as The Wagner Law Group (hereafter collectively referred to as "Lawyer Wagner").

### **The Summons**

11. On or about March 30, 2011 Respondents' revenue agents executed a summons in the matter of Tax Shelter investigation of Kenneth Elliott, Incorporated. See Exhibit A. In Attachment 1 to this summons the Respondents defined various terms. These definitions unduly and unfairly expanded and broadened beyond reasonable bounds all categories of the requests for documents identified in Attachment 2. Each of the categories make sweeping requests by themselves, but when expanded by the attached definitions, it then demands every conceivable kind of document that a person or business forever may retain. By way of example, included in this list of definitions was the term "Documents" which was defined as:

> "The term "Documents" is used in a comprehensive sense and includes without limitation canceled checks, account statements, transaction summaries, letters, messages, correspondence, facsimiles, electronic mail, licenses, agreements, assignments, reports, presentations, memoranda, minutes, bulletins, circulars, instructions, working papers, notebooks, photographs, prints, drafts, worksheets, summaries, studies, fact sheets, invoices, corporate records, notices, invoices, bills, logs, contracts, leases, books, manuals, marketing and/or other promotional materials, charts, graphs, surveys, legal opinion letters, auditor's reports or statements, plan documents, adoption and/or joinder agreements, actuarial reports or statements, financial reports, and other reports of other writings, of any nature, in your possession or control, unless otherwise stated in the request. The term "documents" also includes all non-paper versions of the foregoing items, including without limitation videos, tapes, cassettes, films, microfilms, computer disks, CD-ROMs, software programs, all files maintained on any Internet or Intranet sites, and all mechanical, electronic or photocopy reproductions of the forgoing items."

12. The Summons requests that Lawyer Wagner produce nine years of documents and records specially created for and communicated to Lawyer Wagner's client, Nicolas Hodges. This petition seeks Court protection for these documents and from being required to give testimony on the grounds that the Summons invades the attorney-client privilege and the attorney work product privilege, as shown herein below.

13. Attachment 1 to the Summons identifies the words "you" or "your" as Marcia Wagner, John R. Keegan and the law firm (Wagner Group), all of which are lawyers, required to assert the attorney client privilege when asked to divulge client protected communications. This same attachment identifies "Hodges" as Nicolas C. Hodges, the client who engaged the lawyers to perform legal services. Using these identifications, the IRS is demanding documents and testimony of all client "correspondence" (items 1(b-d), "documents" provided by the client Hodges (items 1(f-g), "legal opinions or reports" prepared by the attorneys (item 1(h), "engagement letters" (item 1(i), "conference notes" (item 1(j), computer programs and spreadsheets (item 1(k), invoices reflecting legal services provided (item 1l), and legal, actuarial, and tax opinions provided to the lawyers concerning the client (item 1(m). As shown all of these requests invade either the attorney work product privilege or the attorney client privilege, or both.

14. As expressed in the accompanying Affidavit of Nicolas Hodges, the client hired a law firm known as "The Wagner Law Group" located in Boston, Massachusetts, to research and report the result of their work in an opinion in writing. The client worked with that law firm, including lawyers Marcia Wagner and John Keegan, named in the Summons, sending them confidential materials and documents that were necessary in obtaining the requested legal services. As stated in the accompanying affidavit, "It was at that time and still is today, my intent that the content of all documents I sent to and received from these lawyers should remain confidential and

5

not be disclosed without my consent or knowledge." See Affidavit of Nicolas Hodges.[1] At the completion of the work requested, the lawyers were paid for their services.

15. Recently the client was informed by the IRS that some part of the work done for him by The Wagner Law Group was somehow sent to the IRS. The client immediately notified the agent working on the matter, that any disclosure, whether by mistake, inadvertence or theft, of any of the documents the client caused to be sent or that he received from these lawyers was done so without the client's consent or knowledge. The client asked that the IRS immediately return such documents. The client informed the IRS that it is not now nor ever was his intent to give up or waive the attorney client privilege formed between him and The Wagner Law Group. See Hodges Affidavit.

16. Unless this court protects the attorney client privilege and the work product privilege, these privileges will be forever lost. Therefore, Petitioner respectfully requests that this Court issue an order quashing the Summons.

## ARGUMENT

### I. IRS SUMMONS POWER DOES NOT OVERTHROW WELL-RECOGNIZED PRIVILEGES

The attorney-client privilege is "one of the oldest recognized privileges for confidential communications" known to the common law. Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998). "The purpose of the privilege is to encourage full disclosure and to facilitate open communication between attorneys and their clients." United States v. BDO Seidman, 337 F.3d 802, 810-11 (7th Cir. 2003).

The rationale for the privilege is that safeguarding communications between attorney and client, it encourages disclosures by the client to the lawyer that facilitate the client's compliance

---

[1] The Affidavit of Nicolas Hodges has been filed herewith in support of this Petition to Quash Third-Party Summons.

with the law and better enable the client to present legitimate arguments should litigation arise. See United States v. Massachusetts Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997). The privilege is well established; indeed, it "first appeared in the sixteenth century," P.R. Rice, Attorney-Client Privilege in the United States § 1:1, at 6 (2d ed.1999), and it is "the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see also 8 J. Wigmore, Evidence § 2290 at 542 (McNaughton rev. ed. 1961). We note, but do not rely on, the doctrine of construing the privilege narrowly, which has particular force in the context of IRS investigations given the "congressional policy choice in favor of disclosure of all information relevant to a legitimate IRS inquiry." United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984). Even in other contexts, there is a more general reason for construing the attorney-client privilege narrowly: the belief that "[t]he investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges." Wigmore, supra, § 2192, at 73; see also In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir.2001) ("[T]he privilege applies only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client."); Cavallaro v. United States, 284 F.3d 236, 245-46 (1st Cir. 2002).

The broad summons power authorized under 26 U.S.C. § 7602 has been limited by the Supreme Court under circumstances where "traditional privileges and limitations" exist. A classic example of such a privilege is the attorney-client privilege which Respondent claims applies in the case sub judice. In Upjohn Company v. United States, 449 U.S. 383, 398 (1981) ("Upjohn"), the Supreme Court held that the attorney-client privilege and the work product doctrine limited the scope of the IRS summons power. The burden of proving the attorney-client

567830.1

Case 1:11-cv-10627-RWZ   Document 1   Filed 04/13/11   Page 8 of 10

8

privilege rests in the party asserting the privilege, however. See United States v. Ponder, 475 F.2d 37, 39 (5th Cir. 1973). It must further be stressed that the attorney client privilege is limited to confidential communications between the lawyer and client made for the purposes of securing legal advice. See generally, United States v. Melvin, 650 F.2d 641 (5th Cir.1981); United States v. McDonald, 313 F.2d 832 (2d Cir.1963); United States v. Aronson, 610 F. Supp. 217, 220-21 (S.D. Fla. 1985), aff'd, 781 F.2d 1580 (11th Cir. 1986).

Here the client (Nicolas Hodges) had a right to expect that his communication to and from his lawyers would be protected by the privileges. The IRS is seeking documents of correspondence between the client and the lawyer. The face of the Summons shows the identity of the lawyers and the attached affidavit shows that the client's intent was to preserve the privilege at the time the legal advice and opinions were sought. The IRS seeks to unfairly invade the obvious privileges and once waived to use the documents in a manner never allowed by law.

8

567830.1

WHEREFORE, for all of the foregoing reasons the Petitioner Kenneth A. Elliot respectfully requests this Court quash the Summons attached hereto as Exhibit A and grant such further relief to the Petitioner as deemed just and appropriate under the circumstances.

Dated:  April 12, 2011

Respectfully submitted,

Petitioner, Kenneth A. Elliot

By his attorneys,

/s/ Rory Z. Fazendeiro
Pamela E. Berman | BBO# 551806
Rory Z. Fazendeiro | BBO# 648334
ADLER POLLOCK & SHEEHAN P.C.
175 Federal Street
Boston, MA 02110
(617) 603-0552 (Telephone)
(617) 482-0604 (Facsimile)
pberman@apslaw.com (E-mail)
rfazendeiro@apslaw.com (E-mail)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 12, 2011 this document is being filed electronically through the ECF system and paper copies will be sent to the following:

<u>Via Certified Mail</u>
Eric H. Holder, Esq.
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530-001

<u>Via Certified Mail</u>
Gail Kaipio
24000 Avila Rd.
M/S 5114 GK
Laguna Niguel, California 92677

<u>Via Certified Mail</u>
Carmen M. Ortiz, Esq.
United States Attorney for the District
of Massachusetts
John Joseph Moakley United States
 Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

<u>Via Certified Mail</u>
Marcia S. Wagner, Esq.
Wagner Law Group, President
99 Summer Street, 13th Floor
Boston, Massachusetts 02110

/s/ Rory Z. Fazendeiro
Rory Z. Fazendeiro

567830.1